Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
Jose Maria D. Patino, Jr. (SBN 270194)
jose@setarehlaw.com
Tyson Gibb (SBN 339154)
tyson@setarehlaw.com
SETAREH LAW GROUP
420 North Camden Drive
Beverly Hills, California 90210
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
LAWRENCE KELLY, JR.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE KELLY, JR., on behalf of himself and all others similarly situated,<br><br>     *Plaintiff*,<br><br>     v.<br><br>ARAMARK SERVICES, INC., a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>     *Defendants*. | Case No. 3:22-cv-01272-AMO<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed Concurrently with the Declarations of Shaun Setareh, Lawrence Kelly, Jr., Lisa Mullins and [Proposed] Order*]<br><br>Date:   July 31, 2025<br>Time:  2:00 p.m.<br>Place:  Courtroom 10 – 19th Floor<br>        450 Golden Gate Avenue<br>        San Francisco, California 94102<br><br>Complaint Filed: March 1, 2022 |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 31, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 10 of the United States District Court for the Northern District of California, located on the 19th Floor at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff LAWRENCE KELLY, JR. ("Plaintiff") will and does hereby move this Court to: (1) conditionally certify proposed settlement classes; (2) preliminarily approve the Parties' proposed class action settlement (the "Settlement"); (3) appoint Plaintiff as the Class Representative, his counsel as the Class Counsel, and ILYM Group, Inc. as the Settlement Administrator; (4) approve the form of Class Notice and proposed timeline for administration; and (5) schedule a hearing on the final approval of the Settlement for January 22, 2026, or as soon thereafter as the Court is available.

This Motion is made on the grounds that the Settlement is fair, adequate, reasonable, and within the range of possible final approval.

This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Classes, the points and authorities herein, the accompanying Declarations of Shaun Setareh, Lawrence Kelly, Jr., and Lisa Mullins, all accompanying exhibits, as well as all other pleadings and papers on file with this Court and such further evidence and arguments as may be presented at the hearing.


DATED: June 25, 2025                    SETAREH LAW GROUP


                                        */s/ Jose Maria D. Patino, Jr.*
                                        SHAUN SETAREH
                                        JOSE MARIA D. PATINO, JR.
                                        TYSON GIBB
                                        Attorneys for Plaintiff
                                        LAWRENCE KELLY, JR.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES

TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT BACKGROUND ............................................................................ 2

    A.    FACTUAL AND PROCEDURAL BACKGROUND ................................ 2

        1.    The Parties .............................................................................. 2

        2.    Procedural History .................................................................. 3

    B.    PLAINTIFF'S CLAIMS AND DEFENDANT'S DEFENSES ................. 4

        1.    Unpaid Wages ......................................................................... 4

        2.    Meal Break and Rest Break Violations ................................... 5

        3.    Derivative Claims for Statutory and Civil Penalties ............. 6

    C.    PLAINTIFF'S ASSESSMENT OF DAMAGES ..................................... 7

III.  THE SETTLEMENT ............................................................................................ 9

    A.    THE SETTLEMENT CLASSES ............................................................. 9

    B.    GROSS SETTLEMENT AMOUNT ...................................................... 10

    C.    SCOPE OF THE CLASS MEMBER RELEASES ................................ 10

    D.    NOTICE PROCEDURES ...................................................................... 11

    E.    PAYMENT OF SETTLEMENT AMOUNTS ....................................... 12

    F.    TAX TREATMENT ............................................................................... 12

IV.   THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL .......... 12

    A.    NORTHERN DISTRICT PROCEDURAL REQUIREMENTS FOR CLASS ACTION SETTLEMENTS .................................................. 14

        1.    Any Differences Between the Settlement Class and the Class Proposed in the Operative Complaint or Between the Claims Released in the Settlement and Those Pled in the Operative Complaint ................................... 14

        2.    Estimate of the Number of Class Members Expected to Submit a Claim .......... 14

        3.    Other Cases Potentially Impacted by the Settlement ........................................ 14

        4.    Settlement Administration ...................................................... 15

        5.    Class Counsel's Lodestar and Multiplier Sought ................. 15

            a.    A Reasonable Result Was Achieved on Behalf of the Class ............... 15

b.    The Experience, Reputation, and Ability of Class Counsel ................. 17

c.    The Effort Required by the Litigation Justifies the Fee......................... 17

d.    The Complexity of the Legal and Factual Issues ................................. 17

e.    Class Counsel Assumed Substantial Risk ............................................ 18

6.    Notice Pursuant to the Class Action Fairness Act of 2005 .............................. 18

7.    Notice to the LWDA Pursuant Cal. Labor Code § 2699(l)(2) .......................... 18

8.    Plaintiff's Enhancement Award ...................................................................... 19

B.    THE SETTLEMENT IS THE PRODUCT OF INFORMED, NON-COLLUSIVE NEGOTIATIONS ................................................................................................ 19

C.    THE SETTLEMENT HAS NO "OBVIOUS DEFICIENCIES" ................................. 19

D.    THE SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL ......... 20

1.    Liability Is Contested, and the Settlement Provides Class Members with Substantial Monetary Relief ........................................................................... 21

2.    The Class Release Is Appropriate Given Plaintiffs' Claims .............................. 21

3.    Class Counsel's Fees Sought Are Consistent with Prevailing Market Rates ..... 22

E.    CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS AND COLLECTIVE FOR SETTLEMENT PURPOSES ONLY IS APPROPRIATE .......... 22

1.    The Numerosity Requirement Is Met ................................................................ 22

2.    Commonality and Typicality Requirements ....................................................... 23

3.    Adequacy of Representation ............................................................................. 23

4.    Class Certification for Settlement Purposes is Proper Under Rule 23(b)(3) ...... 24

F.    THE NOTICE IS FAIR AND ADEQUATE ............................................................. 24

G.    ILYM SHOULD BE APPOINTED SETTLEMENT ADMINISTRATOR ................. 25

H.    RESIDUAL ............................................................................................................ 25

I.    PAST DISTRIBUTIONS ........................................................................................ 26

J.    PROPOSED SCHEDULE ...................................................................................... 26

V.    CONCLUSION .............................................................................................................. 26

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES

TABLE OF AUTHORITIES

<u>Cases</u>

*Aguirre v. DirecTV, LLC*, 2017 WL 6888493 (C.D. Cal. Oct. 6, 2017) ..............................................11

*Aken Gonqueh v. Leros Point to Point, Inc.*, 2016 WL 791295 (S.D.N.Y. Feb. 26, 2016) .................11

*Askar v. Health Providers Choice, Inc.*, 2021 WL 4846955 (N.D. Cal. Oct. 18, 2021) ....................11

*Cavazos v. Salas Concrete, Inc.*, 2022 WL 506005 (E.D. Cal. Feb. 18, 2022) ...................................11

*Chetwoodv. T-Mobile USA, Inc.*, 2021 WL 2206481 (W.D. Wash. June 1, 2021) ............................11

*Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004)........................................24

*Class Plaintiff v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)................................................12, 13

*Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967) .22

*Diaz v. Trust Territory of Pac. Islands,* 876 F. 2d 1401 (9th Cir. 1989) ...........................................13

*Ellender v. Schweiker*, 550 F. Supp. 1348 (S.D.N.Y. 1982) ..............................................................23

*Flannery v. California Highway Patrol*, 61 Cal.App.4th 629 (1995) .................................................17

*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000) ....................................................22, 23

*Gay v. Waiters' & Dairy Lunchmen's Union Loc. No. 30*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982) ....................................................................................................22

*Gordon v. Forsyth Cty. Hosp. Auth., Inc.*, 409 F. Supp. 708 (M.D.N.C. 1975), *aff'd in part, vacated in part*, 544 F.2d 748 (4th Cir. 1976) ..............................................................................................23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................................13, 23, 24

*In re Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 (C.D. Cal. June 10, 2005).........................17

*In re Immune Response Securities Litigation*, 497 F.Supp.2d 1166 (S.D. Cal. 2007) ........................16

*In re LDK Solar Secs. Litig.*, 2010 U.S. Dist. LEXIS 87168 (N.D. Cal. 2010)..................................20

*In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491 (W.D. Pa. 2003) ........................................................17

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)....................................14, 20

*In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014)...............................................................................................................................20

*In re Traffic Exec. Ass'n-Eastern Railroads*, 627 F.2d 631 (2d Cir. 1980).......................................13

*Ketchum v. Moses*, 24 Cal.4th 1122 (2001)........................................................................................18

*Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008) ....................................................23

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES

*Leverage v. Traeger Pellet Grills, LLC*, 2017 WL 6405619 (N.D. Cal. Dec. 15, 2017) ...................11

*Linney v. Cellular Alaska Partnership,* 1997 WL 450064 (N.D. Cal. Jul. 18, 1997) ...................16, 20

*Luo v. Zynga Inc*, 2014 WL 457742 (N.D. Cal. Jan. 31, 2014) .........................................................13

*Lyons v. Bank of Am., NA,* 2012 WL 5940846 (N.D. Cal. Nov. 27, 2012) ......................................13

*Maciel v. Bar 20 Dairy, LLC*, 2021 WL 1813177 (E.D. Cal. May 6, 2021) .....................................11

*Marin v. Costco Wholesale Corp.*, 169 Cal.App.4th 804 (2008) ........................................................7

*McNeill v. New York City Housing Authority*, 719 F.Supp. 233 (S.D.N.Y. 1989) .............................23

*Mendoza v. Tucson Sch. Dist. No. 1.*, 623 F.2d 1338 (9th Cir. 1980) ................................................24

*Naranjo v. Spectrum Sec. Servs. Inc.*, 15 Cal.5th 1056, 1090 (2024) ................................................7

*North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal.App.4th 1085 (1994) ...........13

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ...............................................................................15

*Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989), *remanded on other grounds* 40 F.3d 1155 (11th Cir. 1994) ........................................................................................................................22

*Serrano v. Priest*, 20 Cal.3d 25 (1977) .............................................................................15, 17, 18

*Smith v. Rae-Venter Law Grp.*, 29 Cal.4th 345 (2002) .......................................................................6

*Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671 (N.D. Cal. Jun. 17, 2015) .....20

*Susquehanna Tp. v. H and M, Inc.*, 98 F.R.D. 658 (M.D. Pa. 1983) .................................................23

*Tavaglione v. Billings,* 4 Cal.4th 1150 (1993) ...................................................................................7

*Tombline v. Wells Fargo, NA,* 2014 WL 5140048 (N.D. Cal. Oct. 10, 2014) ....................................13

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) .........................................................12

*Villafan v. Broadspectrum Downstream Servs.*, 2021 WL 6332128 (N.D. Cal. Apr. 8, 2021) ...........11

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ..............................................15, 17, 18

*Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224 (2001) .........................................................17

Statutes

28 U.S.C. § 1715 ...............................................................................................................................18

28 U.S.C. § 1332 ...............................................................................................................................18

28 U.S.C. § 1453 ...............................................................................................................................18

29 U.S.C. § 207 ...................................................................................................................................7

Cal. Bus. & Prof. Code § 17208 .................................................................................6

Cal. Code Civ. Pro. § 338 ...........................................................................................6

Cal. Lab. Code § 510 ...................................................................................................7

Fed. R. Civ. P. 23 ..................................................................................12, 22, 23, 24

### Other Authorities

*Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ..................................12

*Newberg on Class Actions* 4th (2002) ..............................................................12, 13, 14

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    <u>INTRODUCTION</u>**

3    Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Certification of

4    Settlement Class (the "Motion") seeks preliminary approval of the class action and Private Attorneys

5    General Act of 2004 (Cal. Lab. Code § 2698, *et seq.*) ("PAGA") representative action settlement

6    between Plaintiff and Aramark.  As the result of arm's-length negotiations, the Parties have reached a

7    fair and reasonable class action settlement of Plaintiffs' claims. Pursuant to the Settlement Agreement

8    ("Agreement"),[1] The Parties now request that the Court enter an order: (1) preliminarily approving the

9    Agreement; (2) certifying the Settlement Class only for purposes of settlement under the Agreement; (3)

10    appointing Plaintiff as the Class Representative, Setareh Law Group as Class Counsel, and ILYM

11    Group, Inc. ("ILYM") as the Settlement Administrator; (4) approving and directing the emailing and

12    mailing of the Class Notice; and (5) scheduling a final approval hearing on January 22, 2026 or a later

13    date available to the Court.

14    The Agreement provides for a non-reversionary Gross Settlement Amount ("GSA") of **$95,000**

15    (Agreement, ¶ 3.3.1.)  The GSA shall include all payments contemplated by the Agreement, including as

16    approved by the Court, Class Counsel's attorneys' fees and costs, Enhancement Award, Settlement

17    Administration Costs; the PAGA Payment to the LWDA and the PAGA Members, and the Individual

18    Settlement Payments to the Participating Class Members. (*Id.*)  Notwithstanding the foregoing, in

19    addition to the GSA, Defendant will pay the employer's portion of payroll taxes, including FICA and

20    FUTA, on the portion of each Individual Settlement Payment allocated as unpaid wages. (*Id.*) No

21    Settlement Class Member will have to submit a claim form in order to receive a proportionate share of

22    the Settlement Fund, and checks will be distributed directly to them. (*Id.*, ¶¶ 1.2.5, 3.4.4.)  Any checks

23    issued to Settlement Class Members shall remain valid and negotiable for 180 calendar days after the

24    date they are issued. (*Id.*, ¶ 4.10.)  In the event that an Individual Settlement Payment check has not been

25    cashed within 180 calendar days, then such funds will be tendered to the State of California Unclaimed

26    _____

27    [1] The Agreement between the Parties is attached as **Exhibit A** to the Declaration of Shaun
Setareh in Support of Motion for Preliminary Approval of Class Action Settlement and Certification of

28    Settlement Class ("Setareh Declaration" or "Setareh Decl.") filed concurrently herewith.

Property Fund in the name of Settlement Class Member who did not cash the check. (*Id.*) As estimated by Aramark at the time the Agreement was reached, there are 97 Class Members. (Setareh Decl., ¶ 36.) Aramark represents that the Settlement Classes had worked an estimated 4,050 workweeks as of January 10, 2024. (Agreement, ¶ 3.3.2.)

The Net Settlement Amount ("NSA"), estimated to be paid to Class Members—after all Court-approved deductions from the GSA, *i.e.*, Class Counsel fees of $23,750 (25% of the GSA),[2] litigation costs of up to $5,000, settlement administration costs estimated not to exceed $7,500, the PAGA Payment of $5,000 ($3,750 to the Labor & Workforce Development Agency ("LWDA") and $1,250 to the PAGA Members), Plaintiff's Enhancement Award of $5,000—is **$48,750.00**. (Setareh Decl., ¶ 36.) The average estimated Individual Settlement Payment for each Class Member is **$502.58**. (*Id.*)

As discussed below, the Settlement reached here is a good result given the claims at issue in this case, the risk that no class would be certified, Aramark's defenses on the merits, and the significant monetary amount obtained for the Classes, which compares favorably to similar settlements approved by other courts.

## II.    RELEVANT BACKGROUND

### A.    FACTUAL AND PROCEDURAL BACKGROUND

#### 1.    The Parties

Aramark is a large facilities services provider and food services provider operating in multiple different countries with a large array of different clients.[3] In relevant part, Aramark employed drivers in its Refreshments line of business to service vending machines for its clients' locations during the period from March 1, 2018 through February 10, 2024. (Setareh Decl., ¶ 53.) These Refreshment Service Representatives ("RSRs") were drivers who had set routes with several vending machines at set

---

[2] Under the terms of the Agreement, Class Counsel may seek 1/3 of the GSA in attorneys' fees, or $31,666.67. (Agreement, ¶ 3.4.2.) However, here, Class Counsel elect to seek only 25% of the GSA, or $23,750, in keeping with the Ninth Circuit benchmark for common fund settlements and to increase the recovery for the class members. (Setareh Decl., ¶ 39.) As a result, the average estimated Individual Settlement Payment for each Class Member has increased from $420.96 to $502.58. (*Id.*)

[3] https://forms.aramark.com/-/media/files/aramark-timeline.pdf?la=en&hash=93314DEEB11A8E6041321E1E86C41CCC21CF1D55

1  locations that they would be expected to service during their shifts.  (*Id.*)  The RSRs would drive to each

2  location on their routes to service the machines and collect money from the vending machines. (*Id.*)

3       Plaintiff Lawrence Kelly, Jr. is a California resident who worked for Aramark as an RSR Driver

4  in Aramark's Refreshments line of business in California in San Francisco servicing vending machines

5  for Aramark from approximately February of 1988 through February 13, 2020.  (Declaration of

6  Lawrence Kelly, Jr. ("Kelly Decl."), ¶¶ 1, 3; Setareh Decl., ¶ 54.)

7              **2.    Procedural History**

8       On March 1, 2022, Plaintiff filed a Class Action Complaint (the "Complaint") in the United

9  States District Court for the Northern District of California, Case No. 3:22-cv-01272, alleging seven

10 causes of action against Defendant for: (1) Failure to Provide Meal Periods (Cal. Lab. Code §§ 204, 223,

11 226. 7, 512, and 1198); (2) Failure to Provide Rest Periods (Cal. Lab. Code §§ 204, 223, 226. 7, and

12 1198); (3) Failure to Pay Hourly Wages (Cal. Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1197.1 and

13 1198); (4) Failure to Provide Accurate Written Wage Statements (Cal. Lab. Code § 226(a)); (5) Failure

14 to Timely Pay All Final Wages (Cal. Lab. Code §§ 201, 202, and 203); (6) Unfair Competition (Cal.

15 Bus. & Prof. Code §§ 17200 *et seq.*); and (7) Failure to Pay Employees for All Hours Worked (29

16 U.S.C. § 201, *et seq.*) (Fair Labor Standards Act (FLSA)). (ECF 1; Setareh Decl., ¶ 7.)

17      On September 22, 2022, Plaintiff filed a First Amended Complaint ("FAC"), narrowing his class

18 and collective to claims on behalf of Defendant's drivers not covered by the Federal or California Motor

19 Carrier Acts and corresponding regulations.  (ECF 38; Setareh Decl., ¶ 8.)  On May 10, 2023, this case

20 was reassigned to this court under case number 4:22-cv-01272-AMO. (ECF 45; Setareh Decl., ¶ 8.)

21      Plaintiff and Defendant conducted thorough formal discovery prior to resolving the Action, each

22 propounding and responding to written discovery requests. (Setareh Decl., ¶ 9.) Defendant produced

23 Plaintiff's personnel file and records, the relevant wage and hour policies, class list, the total number of

24 putative class members (which was 97) and a sampling of time and payroll records for 1/3 of the putative

25 class members (which indicated a small number of workweeks). (*Id.*) These records allowed Plaintiff to

26 analyze the potential liability of Defendant. (*Id.*)  Furthermore, Defendant took the deposition of Plaintiff

27 on December 12, 2023. (*Id.*)

28      After good-faith and arm's-length negotiations during the first two weeks of January 2024,

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES

without the assistance of a mediator given the small size of the class, all Parties, represented by their respective counsel, recognized the substantial risk of an adverse result in the Action, and the Parties agreed to avoid further litigation by settling and resolving all claims alleged against Defendant in Plaintiff's operative complaint and reached a settlement-in-principle. (*Id*., ¶ 10.) Plaintiff filed a Notice of Settlement on February 23, 2024. (*Id*.)

On June 18, 2024, the Parties fully executed the Memorandum of Understanding enumerating the major terms of the Settlement. (*Id*., ¶ 11.)  As part of the Settlement, the Parties are releasing claims under PAGA. (*Id*., ¶ 12.) On August 8, 2024, Plaintiff submitted a PAGA Notice to the LWDA and served it upon Defendant. (*Id*., Ex. B.) Thereafter, the Parties worked to draft the long-form Agreement, and were able to fully execute it on August 15, 2024. (*Id*., ¶ 13, Ex. A.)

On December 9, 2024, the Parties filed a Joint Stipulation for Leave to File Second Amended Complaint ("SAC"). (ECF 62.) The SAC is intended to be the operative complaint for the purposes of this Settlement, as it adds the claim for PAGA, and, thus, it will cover the class and PAGA claims released. (Setareh Decl., ¶ 14.)

On December 11, 2024, Plaintiff submitted a copy of the fully executed Settlement Agreement to the LWDA. (*Id*., ¶ 15, Ex. C.)

On January 14, 2025, the Court granted the Joint Stipulation to file the SAC, and Plaintiff filed the SAC.  (ECF 67, 68.)

After the Motion has been filed with the Court, Plaintiff will submit the conformed copies of the Motion received via ECF to the LWDA. (*Id*., ¶ 16.)

### B.    PLAINTIFF'S CLAIMS AND DEFENDANT'S DEFENSES

The claims made by the Plaintiff and the defenses raised by the Defendant in this Action are summarized below.

#### 1.    Unpaid Wages

Plaintiff claims that he and the putative class were not paid all wages because Defendant made them perform work off-the-clock during their meal periods to finish their driving routes within the time allotted by Aramark.  (Setareh Decl., ¶ 17.) Plaintiff claims that he and the putative class were constantly issued work assignments which they were not able to complete during a shift of only eight (8) hours.

(*Id.*) Plaintiff alleges that Plaintiff and the putative class would be expected to complete their assigned work with minimal overtime worked. (*Id.*) Plaintiff alleges that Plaintiff and the putative class would have to clock out for their meal breaks but continue to work to finish their work on time. (*Id.*)

Defendant denies Plaintiff's allegations. (*Id.*, ¶ 18.) For instance, Plaintiff's and putative class members' time and payroll records show overtime hours worked and paid during the relevant time period. (*Id.*) Defendant also maintains that its policies regarding the payment of overtime during the relevant time period were compliant with California law both on their face and in practice. (*Id.*) Defendant also maintains that it complied with a collective bargaining agreement that covered Plaintiff's employment and provided for the payment of overtime. (*Id.*)

### 2.    Meal Break and Rest Break Violations

Plaintiff claims that he and the putative class were not provided legally required meal breaks and rest breaks during their shifts. (*Id.*, ¶ 19.) First, they were regularly denied the opportunity to take meal periods in accordance with California law. (*Id.*) As Plaintiff and the putative class were reprimanded for clocking in overtime hours, they were required to finish all of their work within a typical shift within eight hours. (*Id.*) As a result of this practice, Plaintiff and the putative class were regularly not provided with uninterrupted meal periods of at least thirty minutes for each five hours worked because Plaintiff and the putative class had no choice but to work through their recorded meal periods to ensure their assigned workload was finished with minimal overtime worked. (*Id.*) This push to get the routes done in eight hours also meant rest breaks regularly could not be taken. (*Id.*)

Defendant denies all of Plaintiff's allegations. (*Id.*, ¶ 20.) However, the sampling of time and payroll records for the class that was provided by Aramark show only a small percentage of missed, late, or short meal breaks. (*Id.*) The bulk of Plaintiff's meal period claim stems from the allegation that there was a widespread practice of recording meal periods of 30 minutes that did not actually occur but were made to give the appearance of compliance with the stated policy and California law. (*Id.*) The only evidence in the records is the fact that over 50% of meal periods recorded show a length of exactly 30 minutes. (*Id.*) Plaintiff must rely on the assumption that these were recorded falsely. (*Id.*) Defendant further maintains that its policies regarding meal periods and rest breaks for its non-exempt employees in California during the relevant time period were facially compliant with California law and actually

compliant in practice.  (*Id*.)  Moreover, Defendant maintains that it has California-compliant meal and rest break practices and that Plaintiff is subject to a collective bargaining agreement that provides for meal and rest breaks.  (*Id*.)

### 3.     Derivative Claims for Statutory and Civil Penalties

Plaintiff alleges claims for statutory penalties under Labor Code section 203 for failure to timely pay all final wages. (*Id*., ¶ 21.) This is purely derived from the fact that upon termination, the unpaid wages to any employee would not be reflected in the final paycheck upon separation of employment, since they were never paid or recorded in the first place, and the final paycheck would be based only upon the records that were kept by the employer. (*Id*.) Plaintiff also alleges claims for statutory penalties under Labor Code section 226 for failure to provide accurate itemized wage statements. (*Id*.) This is purely derived from the fact that any unpaid wages would not be reflected in the wage statements provided with the paycheck, and such the wage statements must, by definition, be inaccurate. (*Id*.) Plaintiff also seeks restitution of unpaid wages under Business and Professions Code section 17200 *et seq*. for unfair competition. (*Id*.) The UCL provides for restitution of amounts gained through unjust enrichment by unfair competition, which is how unpaid wages are characterized, so the claim is also purely derived from the same underlying Labor Code violations. (*Id*.) The practical effect of this is to extend the liability period for the compensatory claims from 3 years to 4 years prior to the filing of the original Complaint. (*Id*.); Cal. Bus. & Prof. Code § 17208; Cal. Code Civ. Pro. § 338.  Finally, Plaintiffs seek civil penalties under Labor Code section 2698 *et seq*. (PAGA), which derive by definition from the same alleged substantive Labor Code violations.  (Setareh Decl., ¶ 21.)

Defendant contends Plaintiff's derivative claims will fail for the same reasons as their underlying, substantive claims. (*Id*., ¶ 22.) Additionally, Defendant asserts that Plaintiff cannot prove that any nonpayment was willful—a requirement for recovery based on the failure to timely pay wages owed under Section 203.  *See Smith v. Rae-Venter Law Grp.*, 29 Cal.4th 345, 354 n.3 (2002). Nonpayment of wages is not willful when, as here, the employer has a good faith reason to believe that all wages have in fact been paid. *Id*. Nor can Plaintiff show Defendant knowingly and intentionally violated Labor Code Section 226, as is required to recover penalties for Defendant's alleged failure to provide accurate wage statements. (Setareh Decl., ¶ 22.) This is because Defendant has a good faith defense that Plaintiff is not

6

1  owed any wages based on the payroll records showing that employees were paid for all time recorded.

2  (*Id.*) The good-faith defense also applies to wage statement penalty claims. *Naranjo v. Spectrum Sec.*

3  *Servs. Inc.*, 15 Cal.5th 1056, 1090 (2024) (holding that a good-faith factual or legal defense precludes the

4  imposition of penalties under both Section 226 and Section 203).

5  **C.    PLAINTIFF'S ASSESSMENT OF DAMAGES**

6  Below is a chart that describes the estimated potential recovery on a class basis that Plaintiff

7  believes he could reasonably achieve *if he were to prevail on all his claims*.  These are assumptions

8  made from Plaintiff's recollection and analysis of time and pay records extrapolated to the entire class.

**Plaintiff's Estimated Potential Recovery**

Assumptions based on data produced by Aramark:

| | |
|---|---|
| Putative Class Members ("PCMs"): 97 | Putative PAGA Members: 5 |
| Total Workweeks: 4,050 | Pay Periods during PAGA Settlement Period: 75 |
| Avg Hourly Rate: $21.16/hour | Avg Off-the-Clock Time: 2.5 hours/Workweek |
| Avg. Shifts/Workweek: 4.3 | PCMs Separated during 3-yr SOL: 72 |
| Meal Break Violation Rate: 55.8% | Rest Break Violation Rate: 23.3% |
| PCMs During 1-yr SOL: 5 | |

| Claim | Estimated Potential Recovery | Calculations for Estimated Potential Recovery |
|---|---|---|
| Off-the-Clock Unpaid Overtime Wages[4] | $276,376.05 | 30 mins/Shift Avg Off-the-Clock x 4,050 workweeks x 4.3 Avg. Shifts/Workweek x $21.16/hr Avg. Wage x 1.5 OT multiplier |
| Meal Period Premiums | $205,623.78 | 55.8% Meal Break Violation Rate x 4,050 workweeks x 4.3 Avg. Shifts/Workweek x $21.16/hr Avg. Wage |
| Rest Period Premiums | $85,698.00 | 23.3% Rest Break Violation Rate x 4,050 workweeks x 4.3 Avg. Shifts/Workweek x $21.16/hr Avg. Wage |

[4] Plaintiff pled claims for unpaid overtime wages under Cal. Lab. Code § 510 and the FLSA, 29 U.S.C. § 207(a)(1).  Cal. Lab. Code § 510 stipulates that any work in excess of eight hours in one workday *and* any work in excess of 40 hours in one workweek must be compensated at a rate of no less than 1.5 times the regular rate of pay for an employee.  California law is generally more protective of workers compared to federal law, which requires such overtime compensation only after an employee works more than 40 hours in a workweek.  29 U.S.C. § 207(a)(1); *Marin v. Costco Wholesale Corp.*, 169 Cal.App.4th 804, 807 (2008).  The settlement class here is comprised of only California employees of Defendant.  Thus, were Plaintiff and Class Members to prevail on their California law claims for unpaid overtime, they would not be permitted to "double dip" and seek an additional recovery of overtime under the FLSA. *See Tavaglione v. Billings,* 4 Cal.4th 1150, 1158-1159 (1993) (regardless of the nature or number of legal theories advanced, plaintiff is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence).  Any overtime recoverable under the FLSA is already covered by the more protective Cal. Labor Code, and the amount of exposure due to the latter subsumes that due to the former.

| Subtotal (Compensatory Claims) | $567,697.83 | Sum of all above (compensatory claims) |
|---|---|---|
| Late Pay (Labor Code § 203) Penalties | $365,644.80 | 72 PCMs Separated During 3-yr SOL x $21.26/hr Avg. Wage x 8 hours/day x 30 days |
| Wage Statement (Labor Code § 226) Penalties | $7,250.00 | (5 initial violations in 1-yr SOL x $50) + (70 subsequent violations in 1-yr SOL x $100) |
| *Subtotal (Statutory Penalties)* | *$372,894.80* | *Sum of Late Pay and Wage Statement Penalties (statutory penalties)* |
| PAGA Penalties | $7,500.00 | 75 Total PAGA Pay Periods x $100 initial penalty |
| *Total Potential Recovery* | *$948,092.63* | *Sum of all above* |

(Setareh Decl., ¶ 23.)

Despite a total potential recovery of just over $567,000 on his compensatory claims (i.e., for unpaid wages and meal period and rest break violations), and just over $940,000 on all class claims, including statutory penalties, Plaintiff recognizes the challenges he faces in certifying a class action and establishing liability on the wage and hour claims. (*Id.*, ¶ 25.) Plaintiff estimates that his likelihood of prevailing on all his causes of action is low and, thus, his likelihood of recovering $940,000 or anything close to that amount on behalf of a class is very unlikely. (*Id.*)

To obtain a realistic value of the claims, the estimated potential recovery must be adjusted according to the attendant risks at each of the major procedural thresholds of proving liability on the merits at trial, prevailing on an appeal, or obtaining class certification—all three upon which Plaintiff will likely have to prevail to succeed in litigation. (*Id.*, ¶ 26.) With respect to the claims asserted on behalf of the Settlement Classes in this case, there are significant risks that support the reduced compromise amount. (*Id.*) These are discussed in detail in Paragraph 26 (i)-(vii) of the Setareh Declaration filed concurrently herewith with respect to the Compensatory Claims, the Statutory Penalty Claims, and the PAGA Claim.[5] (*Id.*)

On these bases, Plaintiff estimates the following risk-adjusted values for his claims:

---

[5] They are also discussed in Section II.B, *supra*, and ¶¶ 17-22 of the Setareh Declaration.

- <u>Compensatory Claims</u>: $567,697.83 x 40% (chance to certify) x 50% (chance to win at trial) x 50% (chance to win on appeal) = $56,769.78 risk-adjusted value. (*Id.*, ¶ 27.)

- <u>Statutory Penalties</u>: $372,894.80 x 40% (chance to certify) x 40% (chance to win at trial) x 50% (chance to win on appeal) = $29,831.58 risk-adjusted value. (*Id.*)

- <u>PAGA Penalties</u>: $7,500.00 x 50% (chance to win at trial) x 50% (chance to win on appeal) = $1,500 risk-adjusted value. (*Id.*)

These total $88,476.37.  (*Id.*)

For the reasons discussed above, among others, Defendant strongly denies any liability and the propriety of class certification for any reason other than settlement. (*Id.*, ¶ 28.) Continued litigation of this lawsuit presents Plaintiff and Defendant with substantial legal risks that were (and continue to be) very difficult to assess. (*Id.*) Accordingly, in light of the uncertainties of protracted litigation, the Gross Settlement Amount reflects a fair and reasonable recovery for the Settlement Class Members. (*Id.*) The GSA is, of course, a compromise figure. (*Id.*) By necessity, it took into account risks related to liability, damages, class action certification, and all the defenses asserted by the Defendant as to all such matters. (*Id.*) Indeed, Defendant contends that Plaintiff would not have recovered any of these amounts, due to its defenses and the likelihood that the Court would not certify class claims. (*Id.*)

## III.    THE SETTLEMENT

The following is a summary of the material terms of the Settlement:

### A.    THE SETTLEMENT CLASSES

The class to be conditionally certified for settlement is defined as:

[A]ll persons employed by Defendants in the Refreshments line of business in hourly or non-exempt positions in California during the [time period from March 1, 2018, through and including February 10, 2024],[6] other than those persons whose hours were regulated by (1) the United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13; and/or (2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200.  (Agreement, ¶¶ 1.4, 1.36.)

///

---

[6] Subject to Agreement, ¶ 3.3.2, "Escalation of Gross Settlement Amount or Truncation of Class Settlement Period."

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES

**B.    GROSS SETTLEMENT AMOUNT**

Defendants will pay a Gross Settlement Amount of **$95,000**. (Agreement, ¶¶ 1.15, 3.3, 3.4.)  The GSA covers: (1) the Class Representative Enhancement Award of **$5,000** to Plaintiff in compensation for his service and assistance to the Class (*Id.*, ¶ 3.4.1); (2) Class Counsel's Attorneys' Fees and Costs, consisting of attorneys' fees not to exceed **$31,666.67** (1/3 of the GSA) [with $23,750 (25% of the GSA actually sought)], plus costs not to exceed **$5,000**, to compensate Class Counsel for all work performed thus far and out-of-pocket costs incurred in the Action (*Id.*, ¶ 3.4.2); (3) the fees and expenses of the Settlement Administrator, expected not to exceed **$7,500** (*Id.,* ¶ 3.4.3); (4) Individual Settlement Payments paid to Participating Class Members for their class claims (*Id.*, ¶ 3.4.4); and (5) PAGA Payment of **$5,000**, of which 75% ($3,750) will be the LWDA PAGA Payment to paid to the LWDA and the remaining 25% ($1,250) shall be distributed to the PAGA Members as Individual PAGA Payments (*Id.*, ¶ 3.4.5).  The GSA may be subject to an escalator/class period truncation clause in Paragraph 3.3.2 of the Agreement.

Notwithstanding the foregoing, in addition to the GSA, Defendant will pay the employer's portion of payroll taxes, including FICA and FUTA, on the portion of each Individual Settlement Payment allocated as unpaid wages. (*Id.*)

**C.    SCOPE OF THE CLASS MEMBER RELEASES**

The "Effective Date" is defined in Paragraph 1.9 of the Agreement.

The "Released Parties" are defined in Paragraph 1.32 of the Agreement.

The "Participating Class Members" are defined in Paragraph 1.25 of the Agreement.

The "Releases" (or "Released Claims") in Section 3.7 of the Agreement refer to:

- the "Class Representative's Released Claims" as defined in Paragraph 1.6;

- the "Released Class Claims" as defined in Paragraph 1.29;

- the "Released FLSA Claims" as defined in Paragraph 1.30;[7] and

---

[7] *See* fn. 4, *supra*. The release of FLSA claim here is appropriate as it is based upon the same factual allegations for failure to pay overtime as those which underlie the more protective Cal. Labor Code—i.e., failure to pay at least 1.5 times the regular rate of pay for all time beyond 40 hours worked by an employee in a single week.

1    • the "Released PAGA Claims" as defined at Paragraph 1.31.

2        As of the Effective Date, all Participating Class Members fully and finally release the Released

3    Parties from the Released Claims that arose during the Class Settlement Period.  (*Id.*, ¶ 3.7.2.)

4        The procedure for release of the FLSA claims by Participating Class Members is described in

5    Paragraph 3.7.3 of the Agreement.[8]

6        As of the date of the Effective Date, Plaintiff, as representative of the State of California and on

7    behalf of the LWDA and as representatives of the PAGA Members, fully and finally release the

8    Released Parties from the PAGA Released Claims for the PAGA Settlement Period.  (*Id.*, ¶ 3.7.4.)

9        Plaintiff will additionally provide a general release of claims against the Released Parties with a

10   waiver of his rights and benefits under California Civil Code section 1542. (*Id.*, ¶ 3.7.1.)

11   **D.    NOTICE PROCEDURES**

12       If appointed by the Court, ILYM, serving as Settlement Administrator, will send the Notice of

13   Settlement ("Class Notice"), an initial draft of which is attached to the Agreement as "**Exhibit 1**." (*Id.*, ¶

14   _____

15   [8] 29 U.S.C. § 216(b) requires a written consent from an employee of a defendant-employer to become a party plaintiff to a collective action for recovery of unpaid overtime wages under the FLSA.

16   The procedures in the Settlement Agreement with respect to endorsing the settlement payment check address and satisfy this provision of the FLSA particularly where the FLSA component accompanies

17   Rule 23 claims under state law and is limited to a single state.  *See, e.g.*, *Askar v. Health Providers Choice, Inc.*, 2021 WL 4846955 at *13 (N.D. Cal. Oct. 18, 2021) (final approval of hybrid California

18   law/FLSA settlement with co-extensive FLSA class and California law class and release of FLSA claims by way of "notice and check cashing"); *Villafan v. Broadspectrum Downstream Servs.*, 2021 WL

19   6332128, at *3 (N.D. Cal. Apr. 8, 2021) (final approval of hybrid California law/FLSA settlement in which "California class members release their state-law claims related to the same factual predicates and

20   the FLSA claims if they cash the checks (but will not release the FLSA claims if they are not opt-in plaintiffs and do not cash their checks)"); *Leverage v. Traeger Pellet Grills, LLC*, 2017 WL 6405619, at

21   *3 (N.D. Cal. Dec. 15, 2017) (final approval of settlement where "Cashing the settlement check will be deemed an opt-in for purposes of settling and releasing FLSA claims."); *Aguirre v. DirecTV, LLC*, 2017

22   WL 6888493, at *14 (C.D. Cal. Oct. 6, 2017) (preliminarily approving settlement in which "the FLSA settlement requires Class Members to opt-in and those claims are only released when a Class Member

23   cashes their check for the FLSA Settlement Payment").*Cavazos v. Salas Concrete, Inc.*, 2022 WL 506005 at *8 n.5 (E.D. Cal. Feb. 18, 2022) ("In order to opt-in, FLSA Members must cash their

24   settlement checks...."); *Maciel v. Bar 20 Dairy, LLC*, 2021 WL 1813177, at *1 (E.D. Cal. May 6, 2021) (granting final approval where "Only Class Members who cash their FLSA Settlement Checks will

25   release their FLSA Claims."); *Chetwood v. T-Mobile USA, Inc.*, 2021 WL 2206481, at *4 (W.D. Wash. June 1, 2021) (preliminarily approving settlement where class members were informed "if they cash

26   their Individual Settlement Award check, they will thereby opt into the FLSA Settlement Collective and release the FLSA claims."); *Aken Gonqueh v. Leros Point to Point, Inc.*, 2016 WL 791295 at *13-15

27   (S.D.N.Y. Feb. 26, 2016) (final approval of hybrid New York law/FLSA settlement under which class members released FLSA claims if they endorsed settlement checks but did not release FLSA claims if

28   they did not endorse settlement checks).

1.21, Ex. 1.)

The Class Notice procedures are described in Paragraphs 1.3, 1.21, 1.35, 4.1.4, and Sections 4.2-4.6. of the Agreement.

The Objection procedure is described in Section 4.4 of the Agreement.

The Opt-Out Request procedure is described in Section 4.3 of the Agreement.

**E.    PAYMENT OF SETTLEMENT AMOUNTS**

The terms regarding the amount of the GSA are found at Paragraphs 3.3.1 and 3.3.2 of the Agreement.  Procedures regarding distribution of the GSA are found at Paragraphs 3.4.1 through 3.4.5 of the Agreement.  Specifically, the formulae for calculation of Individual Settlement Payments and of Individual PAGA Payments can be found in Paragraphs 3.4.4 and 3.4.5, respectively.

**F.    TAX TREATMENT**

Provisions regarding the tax treatment of payments made under the Settlement are found in Paragraphs 3.5.1 and 3.5.2 of the Agreement.

**IV.    THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL**

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See Newberg on Class Actions* 4th (2002) ("*Newberg*"), § 11.41 (and cases cited therein); *Class Plaintiff v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). A class action, however, may not be dismissed, compromised, or settled without the approval of the court.  Fed. R. Civ. P. 23(e).

Judicial proceedings under Rule 23, Federal Rules of Civil Procedure, have led to defined procedures and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") § 30.41. The *Manual*'s settlement approval procedure describes three distinct steps: (1) Preliminary approval of the proposed settlement at an informal hearing; (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) A "formal fairness hearing," or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.  *Id.*, § 30.41.

1   The procedure, commonly used by federal courts and endorsed by the leading class action commentator,

2   Professor Herbert Newberg, safeguards class members' procedural due process rights and enables the

3   court to fulfill its role as the guardian of class interests.  *See Newberg*, § 11.22 *et seq.*  Federal Rule of

4   Civil Procedure Rule 23(e) requires the Court to review and approve a proposed voluntary dismissal,

5   settlement, or other compromise of a certified class's claims.  The Ninth Circuit has held that Rule 23(e)

6   also applies to settlements before certification, but in a much lighter form that does not entail "the kind of

7   substantive oversight required when reviewing a settlement binding upon the class."  *Diaz v. Trust*

8   *Territory of Pac. Islands,* 876 F. 2d 1401, 1408 (9th Cir. 1989).  Although there has been "some

9   uncertainty" about whether this holding applies in the wake of the 2003 amendments to Rule 23(e), *see,*

10  *e.g., Lyons v. Bank of Am., NA,* No. C 11-1232 CW, 2012 WL 5940846, at *1, n.1 (N.D. Cal. Nov. 27,

11  2012), courts in this district continue to follow *Diaz* to evaluate the proposed settlement and dismissal of

12  putative class claims, *see, e.g., Tombline v. Wells Fargo, NA,* No. 13-cv-04567-JD, 2014 WL 5140048,

13  at *2 (N.D. Cal. Oct. 10, 2014).  *See also Luo v. Zynga Inc.*, No. 13-cv-00186 NC, 2014 WL 457742, at

14  **3-4 (N.D. Cal. Jan. 31, 2014) (applying *Diaz* to proposed settlement of putative class claims under

15  FLSA and state law).

16  The decision to approve or reject a proposed settlement is committed to the trial court's sound

17  discretion; a court's decision to approve a class action settlement may be reversed only upon a strong

18  showing of "clear abuse of discretion."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)

19  (citation omitted); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court

20  cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement,"

21  and will reverse only upon strong showing of abuse of discretion) (citation omitted).

22  The purpose of the preliminary evaluation of class action settlements is to determine only

23  whether the proposed settlement is within the range of possible approval, and thus whether notice to the

24  class of the settlement terms and conditions and the scheduling of a formal fairness hearing is

25  worthwhile.  To grant preliminary approval of this class action settlement, the court need only find that

26  the settlement falls within the range of possible final approval, also described as the "reasonable range."

27  *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal.App.4th 1085, 1089-90

28  (1994); *In re Traffic Exec. Ass'n-Eastern Railroads*, 627 F.2d 631, 633-34 (2d Cir. 1980); *see also* 4

*Newberg*, § 11.25.  In sum, preliminary approval of a settlement and notice to the proposed class (or collective) is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval…"  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

The Settlement proposed by the Parties meets the standards for preliminary approval.

## A.    NORTHERN DISTRICT PROCEDURAL REQUIREMENTS FOR CLASS ACTION SETTLEMENTS

This District promulgated *Procedural Guidance for Class Action Settlements*, which instructs that "[t]he motion for preliminary approval should state," among other things, the following:

### 1.    <u>Any Differences Between the Settlement Class and the Class Proposed in the Operative Complaint or Between the Claims Released in the Settlement and Those Pled in the Operative Complaint</u>

The SAC is the operative complaint upon which the Released Class Claims and the Released PAGA Claims are based. (Agreement ¶ 3.1; Setareh Decl., ¶ 14; ECF 62, Ex. 1.)  There are no differences between the class and claims released in the Settlement and those pled in the SAC.

### 2.    <u>Estimate of the Number of Class Members Expected to Submit a Claim</u>

No claim form is required for each Participating Class Member to receive a proportionate share of the Settlement Fund. (Agreement, ¶¶ 1.25, 3.4.4.) Within 15 calendar days after Defendant funds the Qualified Settlement Fund, the Settlement Administrator shall issue Individual Settlement Payments to Participating Class Members, Individual PAGA Payments to the PAGA Members, the LWDA PAGA Payment to the LWDA, the Court-approved attorneys' fees and costs to Class Counsel, and the court-approved Enhancement Award to the Class Representative. (*Id.*) As estimated by Defendant at the time the Agreement was executed, there are an estimated 97 members of the Settlement Classes. (Setareh Decl., ¶ 36.)  Given the opt-out nature of the Settlement, it is expected that all or nearly all Class Members will participate in the Settlement.

### 3.    <u>Other Cases Potentially Impacted by the Settlement</u>

There are no other pending cases involving the claims in this Settlement. (Setareh Decl., ¶ 29.)

///

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASSES

1          **4.**     **Settlement Administration**

2         Plaintiff obtained bids from potential third-party settlement administrators ILYM Group, Inc.

3 ("ILYM"), Phoenix Settlement Administrators, and American Legal Claim Services, LLC. (Setareh

4 Decl., ¶ 30.)  ILYM was selected because they submitted a bid of $4,950, which Class Counsel believes

5 is reasonable in light of Class Counsel's experience in such settlement administration matters and given

6 the work to be done by or potentially required of the Settlement Administrator due to the various

7 Settlement provisions. (*Id.*)  Over the last two years, Setareh Law Group has engaged with ILYM Group,

8 Inc. 14 times in 14 class actions and/or PAGA representative actions. (Setareh Decl., ¶ 31.)

9          **5.**     **Class Counsel's Lodestar and Multiplier Sought**

10         The Attorneys' Fees requested by Plaintiff are reasonable and fair because the lodestar for the

11 work performed is $132,495.00 with a multiplier sought of 0.18 would result in an amount of $23,750.

12 (*Id.*, ¶ 39.)  The hourly rates are consistent with the prevailing market rates for attorneys of similar

13 experience and have been approved by other federal and state courts.  (*Id.*, ¶ 37.)

14         The Attorneys' Fees award amount of up to 1/3 of the GSA, or $31,666.67, accurately reflects

15 the Parties' intent that Counsel for the Settlement Classes shall seek no more than this amount in fees.

16 (Agreement, ¶¶ 3.4.2.)  However, here, Class Counsel elect to seek only 25% of the GSA, or $23,750, in

17 keeping with the Ninth Circuit benchmark for common fund settlements and to increase the recovery for

18 the Class Members. (Setareh Decl., ¶ 39.)  As a result, the average estimated Individual Settlement

19 Payment for each Class Member has increased from $420.96 to $502.58. (*Id.*)

20         **a.**     **A Reasonable Result Was Achieved on Behalf of the Class**

21         The benefit achieved on behalf of Class Members defines a primary yardstick against which any

22 fee motion is measured. *See Serrano v. Priest*, 20 Cal.3d 25, 49 (1977); *accord Vizcaino v. Microsoft

23 Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).  Courts recognize that arm's-length negotiations conducted

24 by competent counsel are *prima facie* evidence of fair settlements.  The United States Supreme Court

25 held that "[o]ne may take a settlement amount as good evidence of the maximum available if one can

26 assume that parties of equal knowledge and negotiating skill agreed upon the figure through arm's-

27 bargaining. . . ." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999).

28         The Parties reached a settlement in good faith after negotiating at arm's length without the

assistance of a mediator given the small size of the class.  (Setareh Decl., ¶ 32.)  The Parties thoroughly investigated and evaluated the factual and legal strengths and weaknesses of this case before reaching the Settlement. (*Id.*) The Settlement was reached after extensive investigation and research, thorough calculations and risk evaluation, correspondence between Plaintiff's counsel and Defendant's counsel, formal discovery, Plaintiff's deposition, informal exchanges of data and documents—including an evaluation of Class Members' payroll and timekeeping data during the relevant time periods—and an exchange of information required to evaluate all potential defenses and damages. (*Id.*) The information, data, and documents produced by Defendant were sufficient to permit Plaintiff's counsel to adequately evaluate the Settlement. (*Id.*)  And, notably, approval of a class action settlement does not require that discovery be exhaustive.  *See*, *e.g.*, *In re Immune Response Securities Litigation*, 497 F.Supp.2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).  The fact that settlement results from arm's-length negotiations following "relevant discovery" creates "a presumption that the agreement is fair."  *Linney v. Cellular Alaska Partnership*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997).

With respect to the claims asserted on behalf of the Settlement Classes in this case, there are significant risks that support the reduced compromise amount (see estimated potential recovery in Section II.C., *supra*.).  (Setareh Decl., ¶¶ 26-28.)

As estimated by Defendant at the time the Agreement was executed, there are an estimated 97 Class Members. (Setareh Decl., ¶ 36.)  The average estimated Settlement Share for each Class Member is $502.58, assuming no Settlement Class Members opt out and the estimated class size does not change. (*Id.*)  This amount reflects a fair compromise well within the range of reasonableness. (*Id.*)  Given the strong case that Defendant could bring to bear to challenge certification and liability, this is not an inconsequential sum in these challenging economic times. (*Id.*)  And, confirming the fundamental fairness of the Settlement, the Notice sent out by the Administrator shall also provide each Settlement Class Member's number of Workweeks and estimated Individual Settlement Payment calculated by the Settlement Administrator, which members of the Settlement Classes will have an opportunity to dispute. (Agreement, ¶ 4.5, Ex. 1.)

///

**b.      The Experience, Reputation, and Ability of Class Counsel**

California law also recognizes the "skill and experience of attorneys" as appropriate criteria for evaluating a fee motion.  *Flannery v. California Highway Patrol*, 61 Cal.App.4th 629, 647 (1995); *accord In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 513 (W.D. Pa. 2003) ("skill and efficiency of the attorneys" among fee motion criteria); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCx), 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (considering "the quality of Class Counsel's effort, experience and skill").  Class Counsel has had substantial experience with the causes of action here and has regularly litigated employment law class and collective actions. (Setareh Decl., ¶¶ 4-6.)

**c.      The Effort Required by the Litigation Justifies the Fee**

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class and collective action for which final approval is sought.  *See Serrano*, 20 Cal.3d at 49, *accord Vizcaino*, 290 F.3d at 1048-50.  Compared to the reasonable value of the claims, Class Counsel expended substantial effort to reach the Settlement. (Setareh Decl., ¶¶ 7-27, 32-40.)

Class counsel expended considerable time and resources in litigating this matter. (*Id.*)  The work done by the attorneys working on this case includes communicating with Plaintiff, fact investigation, drafting and meeting and conferring on pleadings, meeting and conferring on Defendant's motion to dismiss, opposing motions to dismiss and to relate, meeting and conferring regarding related case, legal research, propounding and responding to written discovery requests, reviewing documents produced by Defendant, defending Plaintiff's deposition, working with an expert to analyze the data produced by Defendant, coordinating with the Parties and counsel to draft the MOU and long-form Settlement Agreement, and drafting a motion for preliminary approval. (*Id.*, ¶ 40.)  The "time and labor" criterion weighs in favor of an award of the requested fees.

**d.      The Complexity of the Legal and Factual Issues**

California law recognizes that the litigation's general complexity and "difficulty of the questions involved, and the skill in presenting them" are properly considered.  *Serrano*, 30 Cal.3d at 49; *accord Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 245 (2001).  Complexity of legal issues was moderate here, though the fee is reasonable, rendering this factor neutral.

*///*

1

### e.      Class Counsel Assumed Substantial Risk

2      The novelty and challenges presented by a class and collective action, as well as the

3   corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly

4   evaluated in connection with a fee motion.  *See Serrano*, 20 Cal.3d at 49; *accord Vizcaino*, 290 F.3d at

5   1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery).  Ninth Circuit and

6   California state courts regard circumstances in which class counsel's work is wholly contingent – as is

7   the case here – as a factor weighing in favor of approving a negotiated fee award that approximates

8   market rates.  *Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33 (2001).  Because of the uncertainty of the

9   outcome in this and other wage and hour litigation undertaken by Plaintiffs' counsel, they took this case

10  with the expectation that a risk enhancement, either in the form of a lodestar multiplier or a percentage of

11  the fund award equivalent thereto, would be available if Plaintiff prevailed. This expectation stems from

12  the fact that many cases undertaken by Plaintiffs' counsel as putative class actions do not resolve

13  successfully.

14

### 6.      Notice Pursuant to the Class Action Fairness Act of 2005

15     Notice pursuant to section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") to the

16  appropriate federal and state officials is required in this action because it is a class action.  28 U.S.C. §§

17  1332(d), 1453(b).  Aramark will provide notice to the appropriate governmental officials within 10 days

18  of the Parties filing the Motion for Preliminary Approval of Class Action Settlement.  (Agreement, ¶

19  4.1.3.)  Pursuant to 28 U.S.C. § 1715(b), the Court may not issue an order granting final approval of the

20  Parties' Settlement earlier than 90 calendar days after the later of the dates on which the appropriate

21  federal official and state officials are served with notice of the proposed Settlement.

22

### 7.      Notice to the LWDA Pursuant Cal. Labor Code § 2699(l)(2)

23     The Agreement provides that by the same date that Counsel for the Settlement Classes files the

24  Motion for Preliminary Approval, Counsel for the Settlement Classes shall additionally file a notice with

25  the LWDA providing the LWDA with notice of the Settlement as required by Cal. Labor Code §

26  2699(l)(2).  (Agreement, ¶ 4.1.2.)  On December 11, 2024, Plaintiff submitted a copy of the fully

27  executed Settlement Agreement to the LWDA.  (Setareh Decl., ¶ 15, Ex. 2.)

28  *///*

### 8.     Plaintiff's Enhancement Award

Here, the Plaintiff seeks an Enhancement Award that may not exceed $5,000.00. (Agreement, ¶ 3.4.1; Setareh Decl., ¶ 45.)  These amounts are very reasonable given the risks undertaken by Plaintiff with their involvement in the Action.  (Setareh Decl., ¶ 45.)  Taking the risk of filing a lawsuit against an employer, particularly one of the magnitude of Defendant, deserves recognition, especially in light of the settlement achieved by Plaintiff.  (*Id.*)  Additionally, Plaintiff was actively involved in the litigation and settlement negotiations of this Action, expending considerable effort in advancing the interests of the classes. (Kelly Decl., ¶ 9.) Plaintiff provided information to counsel before the filing of this action; assisted with gathering information; sat for a full-day deposition; and regularly conferred with his counsel. (*Id.*) Plaintiff contributed about 35 hours of his time to the prosecution of this matter.  (*Id.*)

If the case were lost, Plaintiff could have been ordered to pay Defendants' costs and even attorneys' fees in this case, which could have been thousands of dollars by the end. (Setareh Decl., ¶ 46; Kelly Decl., ¶ 10.) Plaintiff also faces significant stigma for having participated in a federal class action because such records are easily available online to prospective employers who conduct an online search on a job applicant. (Setareh Decl., ¶ 46; Kelly Decl., ¶ 11.)  These facts, in addition to Plaintiff's significant contributions to this case, justify the $5,000 enhancement sought for him.  (*Id.*)

### B.     THE SETTLEMENT IS THE PRODUCT OF INFORMED, NON-COLLUSIVE NEGOTIATIONS

The Settlement was reached after informed, arm's-length negotiations between the parties during the first two weeks of January 2024 without the assistance of a mediator given the small size of the class. (Setareh Decl., ¶¶ 10, 32.)  The Parties conducted investigation and discovery allowing them to assess the strengths and weaknesses of the case. (*Id.*, ¶¶ 32, 33, 35.) Plaintiffs' counsel also retained an expert who reviewed and analyzed payroll and timekeeping data prior to the settlement negotiations.  (*Id.*, ¶ 40.) The Parties were able to come to an agreement and signed a Memorandum of Understanding on June 18, 2024. (*Id.*, ¶ 11.)  Accordingly, the Settlement is the product of non-collusive negotiations.

### C.     THE SETTLEMENT HAS NO "OBVIOUS DEFICIENCIES"

The Settlement is substantial and non-reversionary and provides for a payment of **$95,000** by Defendant, which is, by any account, a significant amount given the value of the claims made by

Plaintiff. (Setareh Decl., ¶ 36.)  The Individual Settlement Payment for each Class Member asserting wage and hour claims will be *pro rata* based on the individual Workweek count for each Class Member divided by the total number of Workweeks for all Class Members, which is a fair way to calculate what each Class Member should receive. (Agreement, ¶ 3.4.4.)  There is an analogous formula for PAGA Members, who are outclass Members who worked during the period from January 10, 2023, to February 10, 2024. (*Id.*, ¶ 3.4.5.) If all other amounts sought are awarded, it is estimated that, before taxes, the average Class Member will receive approximately **$502.58**. (Setareh Decl., ¶ 36.)

Defendant does not oppose the Class Representative Enhancement Award (**$5,000**) or the Class Counsel Attorneys' Fees and Costs (up to $31,666.67 in fees [1/3 of the GSA] of which only **$23,750** [25% of the GSA] is actually being sought, plus up to **$5,000** in costs), and regardless, they are subject to Court approval at the Final Approval hearing. (Agreement, ¶¶ 3.4.1, 3.4.2.)

### D.    THE SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL

The Settlement falls well within the range of possible approval.  To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080.  Following review of the payroll and timekeeping data provided by Defendant and applicable law, Plaintiff's counsel determined that the maximum value of the unpaid wage, meal period, and rest break claims to be approximately $567,697.83 and risk-adjusted all claims to be $88,476.37.  (Setareh Decl., ¶¶ 23, 26.)  Therefore, the settlement amount is approximately 16.7% of the maximum compensatory damages, and 107% of the risk-adjusted recovery.  This is an excellent result, above the amount of many settlements granted final approval by courts within the Ninth Circuit.  *See e.g., Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. Jun. 17, 2015) (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) [(3%]; *In re LDK Solar Secs. Litig.*, No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages").  Of course, it should not be surprising that a settlement yields less than what the class could theoretically have recovered at trial.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of

1  highest hopes") (citation and internal quotation marks omitted).

2      The Settlement should be approved because it confers a substantial benefit on Class Members,

3  while proceeding with litigation would impose significant risk with no guarantee of increased benefits.

4      **1.    Liability Is Contested, and the Settlement Provides Class Members with**
      **Substantial Monetary Relief**

5

6      Plaintiff's counsel conducted a thorough investigation into the facts of this class action and

7  diligently pursued an investigation of Class Members' claims against Defendant.  (Setareh Decl., ¶¶ 7-

8  27, 32-40.)  Plaintiff's counsel conducted informal discovery, reviewed Defendant's written policies,

9  including employee manuals and thoroughly reviewed timekeeping and payroll data to create a reliable

10  damage model detailing the number of possible violations at issue. (*Id.*)

11      For its part, Defendant contests liability in the action, is represented by zealous counsel, and are

12  prepared to vigorously defend against these claims if the Action is not settled.

13      To be sure, if the litigation proceeds, Defendant could face significant liability.  However, while

14  Plaintiff is reasonably confident of a favorable outcome, there is substantial risk that the evidence and/or

15  legal developments could seriously diminish the value of their and the Class Members' claims.

16      In light of these risks for all Parties, the Settlement provides the Class Members with a sizeable

17  recovery while mitigating all Parties' risk if the matter were to proceed.  As such, the Settlement is fair,

18  reasonable, adequate, and is in the best interest of the Classes in light of all known facts and

19  circumstances, including the risk of the significant delay.  The Settlement is also in the best interest of

20  judicial efficiency in this case, as it obviously eliminates a lengthy and contested pre-certification class

21  action lawsuit from this Court's calendar.

22      **2.    The Class Release Is Appropriate Given Plaintiffs' Claims**

23      As described above, as part of the Settlement, Class Members will release all claims arising out

24  of or related to the wage and hour claims (including all derivative claims) and the facts and allegations

25  asserted in the complaints on file, the most comprehensive of which is the operative Second Amended

26  Complaint. (Agreement, ¶¶ 1.6, 1.29, 1.30, 3.7.1, 3.7.2, 3.7.3.)  These released claims appropriately track

27  the breadth of Plaintiff's allegations in the Action. (*Id.*)

28      And, Class Members have the right to opt out of the Settlement by submitting a Request for

1  Exclusion as described in the Class Notice. (*Id.*, § 4.3, Ex. 1.)  If they do so, they will not release any

2  class claims but, of course, also will not share in the class recovery in that event.  This does not apply to

3  PAGA Members, who will release the Released PAGA Claims and receive an Individual PAGA

4  Payment regardless of whether or not they opt out of the Settlement.  (Agreement, ¶¶ 1.16, 1.31, 3.7.4.)

5              **3.    Class Counsel's Fees Sought Are Consistent with Prevailing Market Rates**

6              As more fully explained above in Section IV(A)(4)(a)-(e), the Class Counsel Award requested by

7  Plaintiff is reasonable and fair, because the lodestar for the work performed is $132,495.00 with a

8  multiplier sought of 0.18 would result in an amount close to the fee award being requested by Plaintiff's

9  counsel. (Setareh Decl., ¶¶ 37-39.)  The hourly rates are consistent with the prevailing market rates for

10 attorneys of similar experience and which have been approved by other federal and state courts.  (*Id.*)

11     **E.    CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS AND**
       **COLLECTIVE FOR SETTLEMENT PURPOSES ONLY IS APPROPRIATE**

12

13             Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a conditional

14 determination of whether an action should be maintained as a class action, subject to final approval at a

15 later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Fed. R. Civ. P.

16 23(c)(1)).  Conditional approval of the class is appropriate where the plaintiff demonstrates

17 (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three

18 requirements of Rule 23(b) also is met.  Conditional certification of the settlement class is appropriate

19 here as all the factors Rule 23 requirements are met.

20             **1.    The Numerosity Requirement Is Met**

21             The numerosity requirement is met if the class is so large that joinder of all members would be

22 impracticable.  *Gay v. Waiters' & Dairy Lunchmen's Union Loc. No. 30*, 489 F. Supp. 282 (N.D. Cal.

23 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982).  No specified number of members of class is needed to

24 maintain a class action. *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d

25 648 (4th Cir. 1967); *see also Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989), *remanded on*

26 *other grounds* 40 F.3d 1155 (11th Cir. 1994); *McNeill v. New York City Housing Authority*, 719 F.Supp.

27 233 (S.D.N.Y. 1989); *Ellender v. Schweiker*, 550 F. Supp. 1348 (S.D.N.Y. 1982); *Gordon v. Forsyth*

28 *Cty. Hosp. Auth., Inc.*, 409 F. Supp. 708, 711 (M.D.N.C. 1975), *aff'd in part, vacated in part*, 544 F.2d

748 (4th Cir. 1976); *Susquehanna Tp. v. H and M, Inc.*, 98 F.R.D. 658 (M.D. Pa. 1983). However, numerosity is generally presumed for purposes of class action certification when the proposed class would have at least 40 members. *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008).

Here, the estimated count of approximately 97 Class Members satisfies the numerosity requirement. (Setareh Decl., ¶ 36.)

### 2. Commonality and Typicality Requirements

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon*, 150 F.3d at 1019. Here, Plaintiff alleges that his class claims involve common questions of both fact and law regarding Defendant's alleged failure to abide by state and federal wage-and-hour law—and Defendant will not object to Plaintiff's position on this issue solely for the purposes of the Settlement. (Setareh Decl., ¶¶ 48-49; Agreement ¶ 3.2.)

Furthermore, "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent Class Members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff contends —and, for purposes of the Settlement only, Defendant will not object to Plaintiff's position—that Plaintiff's claims are essentially identical to all other non-exempt employees as described in the Class provided in the Settlement and their claims are typical of such workers with the same common issues. (Setareh Decl., ¶¶ 47; Agreement ¶ 3.2.)

### 3. Adequacy of Representation

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. For purposes of the Settlement only, Defendant will not challenge Plaintiff's claim that the adequacy of representation requirement is met here because Plaintiff claims he the same interests as the Settlement Class, there is no conflict between his claims and those of the other Class Members, and Plaintiff is represented by

1  experienced and competent counsel who have substantial experience in litigating wage-and-hour class

2  actions and who have no known conflict of interest with absent Settlement Class Members. (Setareh

3  Decl., ¶¶ 4-6; Kelly Decl., ¶¶ 1-6; Agreement ¶ 3.2.)

4      **4.**    <u>**Class Certification for Settlement Purposes is Proper Under Rule 23(b)(3)**</u>

5  In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a

6  showing that certification for settlement purposes is proper under one of the three requirements of Rule

7  23(b).  Here, Defendant agrees not to dispute, for purposes of the Settlement only, that certification of the

8  Class is appropriate under Rule 23(b)(3) based on Plaintiff's claim in the settlement context that

9  "questions of law or fact common to class members predominate over any questions affecting only

10  individual members, and…a class action is superior to other available methods for fairly and efficiently

11  adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). (Agreement, ¶ 3.2.)  There are common issues

12  that may predominate over individual issues in this litigation.  For example: (1) whether all meal periods

13  and rest breaks were provided in accordance with the requirements of California law; (2) whether

14  employees were paid for all hours worked; and (3) whether Defendant has any viable class-wide

15  defenses to the class claims.  (Setareh Decl., ¶ 49.)

16      **F.**    **THE NOTICE IS FAIR AND ADEQUATE**

17  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*,

18  150 F.3d at 1025.  A class action settlement notice "is satisfactory if it 'generally describes the terms of

19  the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

20  forward and be heard.'"  *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)

21  (quoting *Mendoza v. Tucson Sch. Dist. No. 1.*, 623 F.2d 1338, 1352 (9th Cir. 1980).

22  Here, the Notice of Settlement (**Exhibit 1** to the Agreement) and the manner of notice are "the

23  best notice practicable" as required under Rule 23(c)(2)(B).  All Class Members can be identified, and

24  the Notice of Settlement will be emailed and mailed directly to each Class Member using First-Class

25  U.S. Mail. (Agreement, ¶¶ 4.2.1-4.2.2.)  The Notice of Settlement adequately informs Class Members of

26  the nature of the litigation, the essential terms of the Settlement, his or her estimated Individual

27  Settlement Payment and other payments (if any), and how to object to, elect not to participate in the

28  Settlement (for Class Members), or correct the information on which his or her Individual Settlement

1  Payment or other payment (as applicable) is calculated.  (*Id.*, ¶ 1.2.1, Ex. 1.)  Further, the Notice of

2  Settlement identifies Class Counsel, specifies the amount of the Class Representative Enhancement

3  Award, the Attorneys' Fees and Costs that Plaintiff will seek, and explains how to obtain additional

4  information regarding the Action and the Settlement. (*Id.*)

5         The Settlement Administrator will attempt to locate any Class Members whose Class Notices are

6  returned as undeliverable.  (*Id.*, ¶ 4.2.2.)   In sum, the procedures set forth in the Settlement provide the

7  best possible notice to the Class Members.

8         **G.      ILYM SHOULD BE APPOINTED SETTLEMENT ADMINISTRATOR**

9         Plaintiffs propose that the Court appoint ILYM to serve as the Settlement Administrator.  ILYM

10  is experienced in administering wage-and-hour class action settlements and is regularly appointed as a

11  claims administrator by California courts to administer settlements, and their protocols comport with the

12  Northern District Guidelines.  (*See generally* Declaration of Lisa Mullins ("Mullins Decl.").)  Over the

13  last two years, Setareh Law Group has engaged with ILYM 14 times. (Setareh Decl., ¶ 31.)  ILYM's

14  estimated fees for administration of the Settlement to 100 class members is $4,950. (Mullins Decl., ¶ 9-

15  10, Ex. C.)  The Parties agree that these estimates are reasonable and adequate to provide the necessary

16  notice of the Settlement to the estimated 97 Class Members, while maximizing the NSA distributed to

17  the Classes. (Setareh Decl., ¶ 30.)  Class Counsel will provide an updated settlement administration

18  expense estimate, if any such adjustment becomes necessary, at the time Plaintiff file the motion for final

19  approval. (*Id.*)

20         **H.      RESIDUAL**

21         In the event that an Individual Settlement Payment or and Individual PAGA Payment check has

22  not been cashed within 180 calendar days, then such funds will be tendered to the California State

23  Controller's Office Unclaimed Property Fund in the name of Settlement Class Members who did not

24  cash their settlement checks. (Agreement, ¶ 4.10.)  Thus, the entire NSA will be paid out to participating

25  Settlement Class Members, whether or not they all cash their individual settlement payment checks. (*Id.*)

26  There will be no residual to dispose of.  (*Id.*)

27  ///

28  ///

25

I.    **PAST DISTRIBUTIONS**

A description of a previous class action settlement in which Plaintiff's counsel was appointed class counsel, final approval was granted, and the settlement funds were distributed is provided at Paragraph 55 of the Setareh Declaration concurrently filed in support of this Motion.

J.    **PROPOSED SCHEDULE**

A proposed schedule is provided at Paragraph 56 of the Setareh Declaration.

**V.    CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court grant their joint motion in its entirety and enter an order:  (1) conditionally certifying the Settlement Class; (2) granting preliminary approval of the Settlement; (3) appointing Plaintiff as the Class Representative; (4) appointing Shaun Setareh, Jose Maria D. Patino, Jr., and Tyson Gibb of Setareh Law Group as Class Counsel; (5) approving and directing the mailing of the Notice of Settlement and related materials; (6) appointing ILYM as the Settlement Administrator; and (7) scheduling the final approval hearing for January 22, 2026, or as soon thereafter as is available and convenient for the Court.

DATED:  June 25, 2025                     SETAREH LAW GROUP

                                          /s/ Jose Maria D. Patino, Jr.
                                          SHAUN SETAREH
                                          JOSE MARIA D. PATINO, JR.
                                          TYSON GIBB
                                          Attorneys for Plaintiffs

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASSES