UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE KELLY,<br><br>    Plaintiff,<br><br>v.<br><br>ARAMARK SERVICES, INC.,<br><br>    Defendant. | Case No. 22-cv-01272-AMO<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 77 |

In this putative class and Private Attorneys General Act ("PAGA") representative action, Plaintiff Lawrence Kelly alleges Defendant Aramark Services, Inc. deprived Kelly and other Aramark workers of wages and legally required meal and rest breaks. This Order assumes familiarity with the facts and procedural history of the case. Before the Court is Kelly's motion for preliminary approval of class action and PAGA settlement. Dkt. No. 77 ("Mot."). The motion was heard before this Court on December 11, 2025. Having read the parties' papers and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, and good cause appearing, the Court grants the motion, for the following reasons, subject to the modifications discussed herein.

**I.    DISCUSSION**

The settlement agreement defines the class as "all persons employed by Defendants in the Refreshments line of business in hourly or non-exempt positions in California during the Class Settlement Period, other than those persons whose hours were regulated by (1) the United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13; and / or (2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200." Settlement Agreement ("Settlement") (Dkt. No. 77-1) ¶ 1.36. The Class Settlement Period is defined as March 1, 2018, through and including February 10, 2024. *Id.* ¶ 1.4. The Settlement

provides for a gross settlement amount of $95,000, which includes a $5,000 PAGA payment,[1] attorney's fees of $23,750,[2] up to $5,000 in litigation costs, up to $7,500 in settlement administration costs, and a service award of $5,000 for Kelly. Mot. at 9-10. After accounting for these expenses, the net settlement amount is $48,750. *Id.* at 10. Each putative class member (of which there are estimated to be 97) will receive an equal share of approximately $502.58. *Id.* at 9-10. In addition, Aramark will pay the employer's portion of payroll taxes on the portion of each Individual Settlement Payment allocated as unpaid wages. *Id.* at 9. The Court first determines if conditional certification of the class is appropriate before assessing whether the settlement is fundamentally fair, adequate, and reasonable. Finally, the Court considers Kelly's proposed notice plan.

## A. Preliminary Approval

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that will bind absent class members. Courts need only conclude the settlement is fair, adequate, and reasonable – not that the settlement is the best possible outcome. *In re Calif. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025). Courts therefore may "neither rubberstamp the settlement nor unduly meddle in the parties' affairs." *Id.* Where a class action has settled before class certification, courts first determine whether class certification is appropriate before making a preliminary determination that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008); *see also* Manual for Complex Litigation, Fourth § 21.632 (FJC 2004). Courts then "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Finally, courts hold a hearing pursuant to Rule 23(e)(2) for final approval of the settlement.

### 1. Conditional Certification

Class certification requires a plaintiff to satisfy Rule 23(a)'s requirements – numerosity,

---

[1] Out of the $5,000 PAGA payment, the California Labor & Workforce Development Agency ("LWDA") will be paid $3,750 and PAGA Members will be paid $1,250. Mot. at 10.

[2] Under the terms of the Agreement, class counsel may seek one third of the gross settlement amount in attorney's fees, or $31,666.67. Agreement, ¶ 3.4.2. However, here, class counsel elect to seek 25% of the gross settlement amount, or $23,750. Mot. at 3, n. 2.

1  commonality, typicality, and adequacy – and one of the bases for certification in Rule 23(b).  As
2  discussed below, Kelly has satisfied Rule 23(a) and Rule 23(b)(3).
3      First, because the class includes an estimated 97 individuals, it is sufficiently numerous
4  that joinder of all members is impracticable.  Accordingly, the first Rule 23(a) factor is satisfied.
5      Second, Rule 23(a)(2) requires commonality, i.e., that there are "questions of fact or law
6  common to the class."  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Here, a
7  question common to the class is whether Aramark violated meal and rest break requirements under
8  California law.  This question can be resolved using common proof, such as agreements, practices,
9  and policies covering all class members.  *See, e.g., Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314
10  (N.D. Cal. 2013) (finding commonality where class members were subject to the same unlawful
11  wage and hour policies and practices); *Nen Thio v. Genji*, LLC, 14 F. Supp. 3d 1324, 1339 (N.D.
12  Cal. 2014) (finding commonality in wage and hour class action).  Thus, Rule 23(a)(2) is satisfied.
13      Third, Rule 23(a)(3) requires plaintiffs show that "the claims or defenses of the
14  representative parties are typical of the claims or defenses of the class" to "assure that the interest
15  of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*,
16  976 F.2d 497, 508 (9th Cir. 1992).  Courts should determine "whether other members have the
17  same or similar injury, whether the action is based on conduct that is not unique to the named
18  plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.*
19  (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  Claims are typical if they are
20  "reasonably co-extensive with those of absent members; they need not be substantially identical."
21  *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (quoting *Hanlon v. Chrysler*
22  *Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (internal quotation marks omitted)).  Kelly is typical
23  of the class because he alleges that he and all class members were subject to the same unlawful
24  practices of Aramark.  Mot. at 13-14; *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 322 (N.D. Cal.
25  2013) (finding typicality where class members were subject to the "same unlawful policies and
26  practices of Defendant.").  Thus, Kelly and the class members' "claims are based on the same
27  legal theory."  *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 511 (N.D. Cal. 2007).
28      Fourth, Rule 23(a)(4) requires that "the representative parties will fairly and adequately

3

protect the interests of the class." This requirement "tend[s] to merge" with the commonality and typicality requirements of Rule 23(a), and aims to ensure class members' interests "will be fairly and adequately protected in their absence," which can be determined in part by considering the "competency and conflicts of class counsel." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 n.13 (1982)). That Kelly has established commonality and typicality is an indication that class members' interests will be protected. Further, there are no signs of conflict between Kelly, class counsel, and the proposed class, nor is there any suggestion Kelly or his counsel will cease competently representing the class.

In addition to satisfying Rule 23(a), the proposed class must satisfy one of the Rule 23(b) requirements. Kelly argues that certification under Rule 23(b)(3) is proper here, as common questions "predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and efficient resolution of the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is established where a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem*, 521 U.S. at 594). A common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* Here, common questions predominate because whether Aramark employed policies and practices that deprived its employees of due wages and proper meal and rest breaks is susceptible to class-wide proof. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314 (N.D. Cal. 2013) (collecting cases). That class members' individual damages may partially rely on individualized evidence does not destroy predominance. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (explaining that although the amount of damages is an individual question, not a common one, "damage calculations alone cannot defeat certification").

Superiority exists where it is determined that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts consider "(1) the class members' interests in individually controlling the prosecution or defense of

1  separate actions; (2) the extent and nature of any litigation concerning the controversy already
2  begun by or against class members; (3) the desirability or undesirability of concentrating the
3  litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class
4  action." *Id.*  Here, there is no indication that class members seek to individually control their
5  cases, that any litigation concerning the controversy has already been commenced, that this forum
6  is undesirable, or that it would be difficult to manage this case as a class action.  Kelly has
7  therefore satisfied Rule 23(b)(3).

Because Rules 23(a) and 23(b)(3) are satisfied, the Court conditionally certifies the class.

### 2. Fair and Reasonable

Having determined that class certification is proper, the Court next considers whether the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d at 674-75.  Preliminary approval of a settlement is appropriate where a court makes a preliminary finding that (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitable relative to each other.  Fed. R. Civ. P. 23(e)(2). Here, the information submitted to the Court establishes that the Settlement satisfies these factors.

#### a. Adequate Representation

To determine whether class counsel and class representatives have adequately represented the class, courts consider the competence of counsel and the class representatives' participation in prosecuting the case. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 890 (N.D. Cal. 2020), *aff'd sub nom. In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102 (9th Cir. 2021).  In support of his motion, Kelly submitted a declaration from class counsel describing counsels' experience with complex class actions and PAGA representative actions.  *See* Declaration of Shaun Setareh ("Setarah Decl.") (Dkt No. 77-1) ¶¶ 4-6.  Counsel has prosecuted various employment class actions, including wage-and-hour class actions, *id.* ¶ 6, and given their experience, the Court finds counsel is sufficiently experienced and competent – an "indication that Plaintiffs have adequately represented the class." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 376 (N.D. Cal. 2021) (citing *In re*

*Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

Additionally, Kelly has demonstrated that he has adequately represented the class. As described above, Kelly's interests are aligned with those of the class members, and he has advanced those interests on behalf of the class through the prosecution of this case. *Id.* at 376 (finding adequacy of representation where plaintiffs satisfied Rule 23(a)'s requirements and "willingly, constructively, and effectively contributed to the prosecution of the claims on behalf of the Class"). Kelly states he has "assist[ed] [legal counsel] in gathering information, . . . gather[ed] documents from [his] employment with Defendant, [and] respond[ed] to discovery requests" to further this litigation. Declaration of Lawrence Kelly (Dkt No. 77-2) ¶ 10. Kelly also states that he has "spent time carefully reviewing the Settlement, and other case-related documents on [his] own and with [his] counsel to make sure that the Settlement and other work [his] attorneys performed are in the best interest of the class." *Id.* This demonstrates adequate representation.

### b. Arm's Length

Courts must not preliminarily approve a settlement with signs of collusion or fraud, suggesting the agreement is not a product of arm's length negotiation. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). Courts look for three "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. If present, the settlement "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Id.* at 946.

The first sign is when counsel receives a disproportionate distribution of the settlement. *Briseño v. Henderson*, 998 F.3d 1014, 1022-23 (9th Cir. 2021) (citing *Bluetooth*, 654 F.3d at 947). Here, the Settlement provides that counsel can seek attorney's fees up to one third of the gross settlement amount. Mot. at 25. Twenty-five percent of a common fund is the benchmark under the percentage-of-recovery method for assessing attorney's fees, *see Bluetooth*, 654 F.3d at 942, so the first "subtle sign" is present here. *See Cottle*, 340 F.R.D. at 376-77. However, the Court

6

notes that counsel has agreed to seek 25 percent of the gross settlement amount. Mot. at 9-10. The Court will address the exact amount of fees to be awarded in the order for final approval.

The second sign of collusion or fraud is when a settlement includes a "kicker" or "reverter" clause providing that unawarded attorney's fees be returned to the defendant, rather than the class. *Briseño*, 998 F.3d at 1023. Here, there is no possibility of reverter to Aramark. Mot. at 31. Finally, the third sign is a "clear sailing" arrangement, *Briseño*, 998 F.3d at 1023, which is not present here, as the fees will come from the settlement fund and settlement class members have standing to object to the award of fees if they believe it excessive. Mot. at 30-31; *Bluetooth*, 654 F.3d at 947 (noting a "clear sailing" arrangement is one in which payment of attorneys' fees is "separate and apart from class funds, [carrying] 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"). Because counsel has agreed to seek 25 percent of the gross settlement amount (as opposed to the 30 percent the settlement agreement allows for), and because the second and third "subtle signs" are not present, the Court finds that the settlement agreement withstands "an even higher level of scrutiny", *Bluetooth*, 654 F.3d at 946, and is a product of arm's length negotiations.

### c. Fair and Adequate Terms

Rule 23(e)(2)(C) requires that the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3) (requiring disclosure of "any agreement made in connection with the proposal").

First, the proposed settlement amount is $95,000. Mot. at 9. Kelly estimates the potential exposure is $567,697.83 in wages and $380,394.80 in penalties for a total exposure of $948,092.63. Mot. at 16. The settlement amount therefore represents about a 17 percent recovery of estimated exposure in wages and ten percent of all potential recovery. Kelly's counsel estimates the risk-adjusted recovery for all claims to be $88,476.37 based on a 40 percent chance

7

of achieving class certification,[3] a 50 percent chance of winning at trial,[4] and a 50 percent chance of winning on appeal. *Id.* at 17. While the Court does not credit these percentages, it agrees that Plaintiff faces risks at each subsequent stage of litigation. The settlement amount is 107 percent of the risk-adjusted recovery. *Id.* In light of comparator cases provided by Kelly, the Court finds that this settlement amount is adequate. It provides for a notably higher average payment than in *Leuzinger v. Gardner Trucking*, where plaintiffs brought similar claims for a class period of about seven years, whereas the class period in the instant case is six years. *Leuzinger v. Gardner Trucking, Inc.*, No. 4:21-cv-04952-YGR, at 3 (N.D. Cal. March 3, 2025). The average recovery per class member in *Leuzinger* was $181.19, whereas the estimated recovery per class member here is $502.58, for a shorter class period. Mot. at 29-30. As a result of the Settlement, class members can avoid the uncertainties and delays inherent in further litigation. Mot. at 32; *see Del Valle v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2025 WL 1651157, at *2 (N.D. Cal. June 10, 2025) (noting the settlement amount was fair in light of, among other things, the risk of years of appeals). Taking into consideration comparable outcomes and the risks and costs of pursuing

---

[3] Plaintiff states there is a risk that the Court will find class certification is inappropriate for his compensatory claims (alleged unpaid overtime wages or alleged failure to provide complaint meal and rest breaks) because individual inquiries are necessary to establish liability. Defendant contends that inquiry into why some employees missed meal and rest breaks would necessarily require an individualized inquiry that would prevent this issue from being resolved on a class and/or collective basis. Dkt. No. 77-1 ¶ 26(i). Further, because the statutory penalties are derived from the compensatory claims, Plaintiff contends he faces similar certification risks for the statutory claims. *Id.* ¶ 26(iv).

[4] Plaintiff states there is a risk that he would be unable to establish liability for his compensatory claims because "most of the shifts in the records produced by Defendant show facial compliance with California law and facially compliant policies." Dkt. No. 77-1 ¶ 26(ii). Further, there is potential that Plaintiff would not recover waiting time and wage statement penalties pursuant to Labor Code Sections 203 and 226. Section 203 requires that a plaintiff show the employer committed a "willful" violation of the law in withholding wages. "A good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." 8 Cal. Code Regs. § 13520. Similarly, penalties pursuant to section 226 require a "knowing and intentional" violation. Defendant contends that it would present several good faith defenses that would preclude a finding of willfulness under section 203 and section 226. *See Choate v. Celite Corp.*, 215 Cal.App.4th 1460, 1462 (2013) (reversing award of section 203 penalties based on good faith defense where underlying wage claim presented issue of first impression). Finally, Defendant has a good faith defense that Plaintiffs are not owed any wages based on the payroll records showing that employees were paid for all time recorded. *See Naranjo v. Spectrum Sec. Servs. Inc.*, 15 Cal.5th 1056, 1090 (2024).

further litigation, the Court finds this settlement is fair and "within the range of reasonableness." *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (quoting *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161-DOC, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014)).

Second, the proposed method of distributing relief to the class is effective. All class members can be identified, and the Notice of Settlement will be emailed and mailed directly to each class member using First-Class U.S. Mail. *Id.* at 24; *see Roberts v. Marshalls of CA, LLC*, No. 13-CV-04731-MEJ, 2017 WL 3314994, at *20 (N.D. Cal. Aug. 3, 2017); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 541 (N.D. Cal. 2007) ("First class mail is ordinarily sufficient to notify class members who have been identified."). Third, the Settlement imposes a limit on the amount of attorney's fees class counsel can request, and the terms of the award of attorney's fees do not suggest the relief provided to class members would be unfair or inadequate. Finally, Kelly has not identified any agreement required to be disclosed under Rule 23(e)(3).

The Court thus concludes the relief provided for the class is adequate and next considers whether the settlement treats the class members equitably.

### d. Equitable Treatment of Class Members

Rule 23(e)(2)(D), which requires that "the proposal treats class members equitably relative to each other," is satisfied here, as the Settlement provides each class member will receive a pro-rata share of the settlement fund based on the individual workweek count for each class member. Mot. at 31; *De La Torre v. CashCall, Inc.*, No. 08-CV-03174-MEJ, 2017 WL 2670699, at *9 (N.D. Cal. June 21, 2017) (finding a pro rata distribution plan did "not favor certain Class Members over others"); *Rubio-Delgado v. Aerotek, Inc.*, No. 13-cv-03105-SC, 2015 WL 3623627, at *8 (N.D. Cal. June 10, 2015) (same). Courts "must carefully consider the disparity created by incentive payments . . . because 'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Wren v. RGIS Inventory Specialists*, No. C-06-5778 JCS, 2011 WL 1230826, at *31-32 (N.D. Cal. Apr. 1, 2011) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)). The Court does not find at this stage that the proposed incentive payment is excessive. Courts in this District "have indicated that . . . as a

general matter, $5,000 is a reasonable amount." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *6-7 (N.D. Cal. Feb. 6, 2012). As described above, Kelly was an active participant in this litigation. He estimates he contributed about 35 hours of his time to this litigation – he sat for a full-day deposition, assisted counsel with gathering information, and regularly conferred with counsel. Mot. at. 28.

### B. PAGA Penalties

As part of the Settlement, Kelly is releasing all claims under PAGA. *Id.* at 12. "'[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state,' the Act requires that a court 'review and approve any settlement of any civil action filed pursuant to [the Act].'" *Hubbard v. Henkel Corp.*, No. 19-CV-04346-JST, 2021 WL 12171868, at *8 (N.D. Cal. Feb. 25, 2021) (quotations and citations omitted). To assess whether a settlement of PAGA claims is fair, courts ask whether the settlement is "fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *Jordan v. NCI Grp., Inc.*, No. EDCV161701JVSSPX, 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) (collecting cases).

Here, Kelly calculates the PAGA recovery to be $7,500. Mot. at 16. Kelly's initial motion did not contain enough information for the Court to assess the accuracy of Kelly's PAGA recovery calculation, so the Court ordered Kelly to submit supplemental briefing. Dkt. No. 87. Kelly's supplemental briefing explains that the PAGA recovery is $7,500 because there are an estimated five "PAGA Members", class members who worked during the PAGA Period from January 10, 2023, to February 10, 2024,[5] who worked for a collective 75 pay periods. Dkt. No. 88 at 2. PAGA penalties are calculated at $100 for each aggrieved PAGA employee per pay period for initial violations. Cal. Lab. Code § 2699(f)(2)(A). Therefore, the maximum total PAGA recovery is $7,500 ($100 x 75 total PAGA pay periods). The proposed settlement's PAGA recovery of $5,000 is approximately 33 percent of the total PAGA exposure. This is a healthy PAGA recovery. *See Jennings v. Open Door Mktg., LLC*, No. 15-CV-04080-KAW, 2018 WL 4773057,

---

[5] Kelly explains that there are far fewer PAGA Members than class members because many employees were laid off between the beginning of the Class Period, March 2018, and the beginning of the PAGA Period, January 2023. Dkt. No. 88 at 2.

at *9 (N.D. Cal. Oct. 3, 2018) ("In this district, courts have raised concerns about settlements of less than 1% of the total value of a PAGA claim.") (citing *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016)). Accordingly, the Court finds that the Settlement's proposed PAGA allocation falls within a reasonable range of recovery.

### C. Notice Plan and Final Approval Hearing

Where a court preliminarily approves a settlement, it must "direct notice in a reasonable manner to all class members." Fed. R. Civ. P. 23(e)(1)(B). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Kelly's proposed notice plan meets that standard, as the notice sufficiently informs class members and PAGA Members of the Settlement's terms, their rights under the Settlement, the process for objecting, opting out, and receiving payment, as well as the date and location of the final approval hearing. *See* Notice of Settlement of Class Action (Dkt. No. 77-1 at 56-63). The Court therefore approves the text of the Class Notice, subject to one modification (Dkt. No. 77-1 at 63). The section titled "Do I have to come to the hearing?" shall be modified to include the deadline for a class member to file a Notice of Intent to Appear and to note that class members seeking to appear virtually at the hearing must make that request in their Notice.

Kelly's plan for distributing the Class Notice is also adequate. The Class Notice will be sent via first-class U.S. mail and by email for all class members. Mot. at 24. The settlement administrator will attempt to locate any class members whose class notices are returned as undeliverable by conducting a skip tracing search. Settlement ¶ 4.2.2.

Finally, Kelly obtained bids from three potential settlement administrators. Mot. at 23. Kelly ultimately chose ILYM Group, Inc. because it was the most cost-effective of the three bids received and because counsel has worked successfully with ILYM many times. *Id.* ILYM is regularly appointed as a claims administrator by California courts and employs protocols for

11

securely handling class member data in compliance with the Northern District Guidelines. *Id.* at 24. The Court therefore appoints ILYM as the Settlement Administrator.

## II. CONCLUSION

For the foregoing reasons, the Court finds the Settlement falls within the range of possible approval as fair, adequate, and reasonable and that there is a sufficient basis for notifying the class and for setting a final hearing. Thus, the Court **GRANTS** the Motion and **ORDERS** as follows:

A. The Court preliminarily certifies the proposed class for settlement purposes pursuant to Rule 23(b)(3). "Class Members" is defined as: "all persons employed by Defendants in the Refreshments line of business in hourly or non-exempt positions in California during the Class Settlement Period, other than those persons whose hours were regulated by (1) the United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13; and / or (2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200." The "Class Period" is defined as March 1, 2018, through and including February 10, 2024.

B. The Court appoints Plaintiff Lawrence Kelly as class representative and Shaun Setareh of Setareh Law Group as class counsel.

C. With the modification described in this Order, the Court approves the text of the Class Notice and approves its dissemination to class members and PAGA Members pursuant to the procedure described in the Settlement.

D. The Court appoints ILYM Group, Inc. to serve as the Settlement Administrator to administer the Settlement in accordance with the terms and conditions of this Order and the Settlement Agreement.

E. The Settlement Administrator shall distribute notice to the class no later than January 9, 2026. Any Class Member who wishes to object to or opt out of the Settlement must do so within 45 days of the date notice is distributed. Any Class Member or PAGA Member who wishes to challenge their estimated settlement payment amount or PAGA Member payment amount must do so within 45 days of the date notice is distributed. Class Members and PAGA Members seeking to opt out, object, or challenge their estimated payments must do so pursuant to the procedure described in the Class Notice.

F. Plaintiff's motion for attorney's fees, costs, and class representative service award shall be filed no later than April 10, 2026.

G. Any Class Member seeking to speak at the final approval hearing, whether in-person or virtually, shall file a Notice of Intent to Appear by April 17, 2026, in accordance with the Class Notice.

H. The Court sets a final approval hearing for June 11, 2026, at 2:00 p.m. in San Francisco, 19th Floor, Courtroom 10, to assist the Court in determining whether to approve the Settlement, motion for fees, costs, and Kelly's service award.

**IT IS SO ORDERED.**

Dated: December 23, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**